**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

TONI LLERA HOLTON, :
:
      Petitioner, :
:
      VS. : 1 : 09-CV-94 (WLS)
:
TONY HOWERTON, Warden, :
:
      Respondent. :

**RECOMMENDATION**

The Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging her 2003 Dougherty County conviction for malice murder. (Doc. 2). Petitioner was indicted by the Dougherty County grand jury for malice murder, felony murder, and feticide on October 23, 2002. Prior to trial, the feticide charge was nolle prossed. Following a jury trial and the return of a guilty verdict, Petitioner was sentenced to life imprisonment on the malice murder charge, with which the felony murder charge had merged as a matter of law. Petitioner filed a direct appeal of her conviction on November 1, 2005. The Supreme Court of Georgia affirmed Petitioner's conviction and sentence on June 26, 2006. *Holton v. State*, 280 Ga. 843, 632 S.E.2d 90 (2006).

Petitioner filed a state habeas petition on April 2, 2007 in the Superior Court of Habersham County. (Doc. 8-2). Following an evidentiary hearing, the state habeas court denied relief on March 6, 2009. (Doc. 8-5). Petitioner's application for a certificate of probable cause to appeal was denied on May 18, 2009. (Doc. 8-7). Petitioner filed this federal habeas petition on June 9, 2009. (Docs. 1, 2).

**Factual Background**

This Court is "bound under 28 U.S.C. § 2254[(e)] to afford factual findings of state [appellate] courts a presumption of correctness." *Towne v. Dugger*, 899 F.2d 1104, 1106 (11th Cir. 1990); *Paxton v. Jarvis*, 735 F.2d 1306, 1308 (11th Cir. 1984). The habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The AEDPA thus retains the statutory presumption of correctness that is to be afforded state courts' factual findings. *Id.* Inasmuch as no dispute has been raised herein regarding the findings of fact issued by the Supreme Court of Georgia, said findings are hereby adopted as follows:

> The victim married John Holton on February 28, 1978. They separated approximately four years later and were divorced on May 19, 1982. John continued to live in the marital home. The couple's child lived with or visited John in the home on a regular basis. At about the time of the divorce, John met the defendant. He offered to let defendant stay in his house and he gave her a key. Thereafter, on June 4, 1982, John and defendant were married; they continued to live in John's house.
>
> On the morning of September 25, 1982, the victim went to John's house. (Some of the victim's clothes and personal effects were still there.) She rang the doorbell several times and placed a note on the screen door. Defendant came to the door with a sawed-off shotgun. She fought with the victim in the front yard; then she fatally shot her. An autopsy revealed that the victim was five months pregnant.
>
> Defendant acknowledged that she shot the victim, but claimed the gun discharged accidentally. According to the defendant, the victim attacked and scratched her. Then, as they fought, the victim pulled a clump of her hair, causing defendant to fall back through the doorway of the house, discharging the gun.
>
> The State introduced evidence that defendant and the victim had a heated telephone conversation within two days of the shooting. It was also established that the night before the shooting, the victim went to a bar where defendant worked; that when the victim entered the bar, defendant threw a glass ashtray at her and told her to "come

> get [her] stuff"; and that a bouncer then escorted the victim out of the bar.
>
> John testified that defendant expressed no remorse on the day of the shooting and that several months later she boasted that she "blew the bitch away". John added that defendant dispassionately said she gleaned a leather jacket from the victim's death.
>
> Finally, the State presented the testimony of a firearms expert who tested the shotgun and opined that the trigger pull required six pounds of pressure and that the shotgun would not fire accidentally. It also introduced the testimony of an expert who testified that the shotgun spray pattern indicated that the victim was shot from a distance of 14 feet; and that the pattern was inconsistent with defendant's version of events.

*Holton*, 280 Ga. at 843-44.

## Standard of Review

Pursuant to 28 U.S.C. § 2254 (d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled that a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts that are "materially indistinguishable" from a relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, the Court held that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

3

An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at. 407. "In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000) (quoting *Williams*, 529 U.S. at 407).

Accordingly, the Petitioner must first establish that the state habeas court's adjudication of his claims was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In other words, as this is a post-Anti-Terrorism and Effective Death Penalty Act ("AEDPA") case, the Petitioner herein may obtain federal habeas relief *only* if the challenged state court decision was either contrary to or an unreasonable application of Federal law as determined by the Supreme Court, or if the state court issued an unreasonable determination of the facts. *Williams*, 529 U.S. at 405; *Early v. Packer*, 537 U.S. 3, 7 (2002); 28 U.S.C. § 2254(d).

## **Petitioner's Habeas Claims**

In her Petition for federal habeas relief, the Petitioner sets forth the following grounds for relief: 1) Petitioner is not guilty as a matter of law as well as immune from prosecution and her continued incarceration would be a manifest injustice; 2) the twenty (20) year delay in prosecuting the Petitioner prejudiced her trial "which would have made a difference"; 3) prosecutorial improprieties violated Petitioner's due process rights; and 4) Petitioner's

4

conviction was based on "unsworn extra judicial hearsay statements", in violation of the Confrontation Clause.[1]

*Change in legal standards*

In Ground 1 of this Petition, the Petitioner argues that Georgia law now provides for a defense to the crime for which she stands convicted, rendering her actually innocent of the charges. Specifically, Petitioner asserts that pursuant to O.C.G.A. §§ 16-3-23.1 and 16-3-24.2, and in particular legislative changes to these code sections in effect since Petitioner's conviction, a person may use deadly force, with no duty to retreat, in defense of habitation. Petitioner maintains that "[u]nder the previous statutory and clarifying enactments when applied to the undisputed facts that the alleged victim repeatedly invaded the premises of Petitioner's habitation, threatened and assaulted the Petitioner demonstrating the Petitioner's actual innocence of the convicted offense and as well as declaration of her immunity from prosecution." (Doc. 4, p. 7).

Respondent maintains that this ground fails to state a claim for relief as it does not allege a violation of clearly established Federal law within the meaning of 28 U.S.C. § 2254(d). Respondent asserts that the issues raised by the Petitioner in Ground 1 pertain solely to state law and do not point to changes in substantive criminal law principles.

Issues of the proper application of state law are beyond the purview of this Court in a federal habeas proceeding. "The States possess primary authority for defining and enforcing the

---

[1] The Court notes that Petitioner, who is represented by counsel, makes a passing reference to the Due Process clause in raising her fourth ground for relief. (Docs. 1, 2). However, as Petitioner does not set out a factual basis or legal argument to support allegations of a Due Process violation, the Court addresses Ground Four based on the arguments actually raised and developed by the Petitioner under the Confrontation Clause. (Doc. 4).

criminal law." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). "[I]t is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). To the extent that the alleged error set forth by Petitioner in Ground 1 concerns only a determination of state law questions, it is outside the province of federal habeas review. *Id.*

The Court notes that the Petitioner, who is represented by counsel herein, generally asserts that this ground also outlines a due process violation, although she relies on and challenges concepts of state law to maintain that she is innocent of the crime of murder based on changes in state law regarding defense of habitation. To the extent that the Petitioner alleges that the change in statutory definition of an available defense to the crime renders her conviction a violation of Due Process, the state habeas court reviewed this claim and found that the changes in Georgia statutes regarding defense of habitation did not effect a new rule of substantive law. (Doc. 8-5, p. 8). Relying on principles of constitutional requirements in the retroactive application of new rules of substantive criminal law, the state habeas court specifically found that:

> the statute has not created a new requirement. The amended statute does not require an individual to retreat when using deadly force to protect her property, and if she is found to do so, she would have immunity from prosecution, but the requirements for use of deadly force still remain: the use of deadly force must have been reasonably necessary. See O.C.G.A. §§ 16-3-23 & 16-3-23.1 & 16-3-24 & 16-3-24.2. At the trial, the jury was instructed concerning the defense of justification and that the prosecution had to prove that Petitioner was not justified in threatening to use force.

*Id.*

The Petitioner has not shown that the state court's decision is contrary to or an

6

unreasonable application of clearly established federal law, nor that it is based on an unreasonable determination of the facts.

Moreover, to the extent that the Petitioner asserts that she is "actually innocent", as that phrase has been defined in federal case law, she has not established her actual innocence. A claim of actual innocence must be supported "with new reliable evidence . . . that was not presented at trial . . . [that shows] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Schlup v. Delo*, 513 U.S. 298, 317 (1995). "[F]actual inaccuracy is not *sufficient* unless the inaccuracy demonstrates, at least colorably, that the petitioner is actually innocent, or ineligible for, either an adjudication of guilt or the sentence imposed." *Johnson v. Singletary*, 938 F.2d 1166, 1182 (11th Cir. 1991).

***Delay in prosecution and Prosecutorial improprieties***

In Grounds 2 and 3 of this federal habeas petition, the Petitioner asserts that the twenty (20) year delay in her prosecution, in connection with alleged prosecutorial improprieties, resulted in a violation of her Due Process rights.

The Supreme Court of Georgia found as follows in regard to this issue:

> Although defendant was arrested in 1982, the grand jury declined to indict her at that time and the case was closed. Nearly 20 years later, a friend of the victim's family contacted the district attorney's office to inquire about the case. The district attorney's office decided to re-open the investigation and, in late 2002, defendant was indicted.
>
> Defendant claims she was denied her due process rights because the State delayed the prosecution for 20 years. In order to prevail on this claim, defendant must show (1) that the delay actually prejudiced the defense and (2) that the prosecution deliberately delayed the case in order to gain a tactical advantage. Defendant has not made either showing. True, several witnesses died in the intervening years and some pieces of evidence were missing. But this hindered the prosecution as much as defendant; it is the type of

7

> prejudice inherent in any extended delay. And even if defendant
> could show actual prejudice as a result of the delay, it cannot be
> said that the delay was the product of deliberate action by the State.
>
> Defendant invites this court to hold that she need not show that the
> State acted deliberately to delay the case. In this regard, defendant
> asserts that she should be able to meet her burden by simply
> showing that the State acted with reckless disregard of the
> prejudicial impact upon her. If defendant had demonstrated actual
> prejudice as a result of the delay, we might be inclined to consider
> defendant's invitation. However, inasmuch as defendant failed to
> make such a showing, we see no reason to plumb this issue at this
> time.

*Holton*, 280 Ga. at 844-45 (2006) (internal citations omitted).

A review of the state court's decision reveals that this decision is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts. Clearly established federal law requires that a defendant asserting a denial of due process resulting from delay in prosecution must show both actual prejudice from the delay and deliberate intent on the part of the prosecution to use the delay to create a tactical advantage over the defendant. *United States v. Marion*, 404 U.S. 307 (1971); *United States v. Lavasco*, 431 U.S. 783 (1977). Pursuant to the Eleventh Circuit's interpretations of the *Marion* and *Lavasco* decisions, a defendant must show "both actual prejudice and deliberate prosecutorial delay to gain tactical advantage" in order to establish a due process violation resulting from delay in prosecution. *Stoner v. Graddick*, 751 F.2d 1535, 1542 (11th Cir. 1985).

The state court herein cited to and relied on state court decisions *Jackson v. State*, 279 Ga. 449, 614 S.E.2d 781 (2005) and *Wooten v. State*, 262 Ga. 876, 426 S.E.2d 852 (1993) in finding that the Petitioner was required to show both actual prejudice and the prosecution's deliberate delay in order to gain a tactical advantage. *Holton*, 280 Ga. at 844. The Eleventh Circuit has

8

found that the *Jackson v. State* decision "properly applied *Wooten*, which correctly outlines the standard for pre-indictment delay as set forth in *Marion* and *Lavasco*. As [the Eleventh Circuit] has held, the petitioner must show both prejudice and deliberate intent." *Jackson v. Benton*, 315 Fed.Appx. 788, 792 (11th Cir. 2009). Based on the state court's proper application of *Wooten*, the Eleventh Circuit found that the state court decision in *Jackson v. State* "was not contrary to or an unreasonable application of federal law." *Id.*

The Petitioner herein has not shown, and in fact does not argue, that the delay in her prosecution resulted from deliberate intent on the part of the prosecution to obtain a tactical advantage. Rather, the Petitioner merely argues that she suffered actual prejudice from the delay and that the Court should require only a showing of "reckless disregard" on the part of the prosecution. As found by the state court, in a proper application of clearly established federal law, both actual prejudice and the prosecution's deliberate intent must be shown to establish a due process violation resulting from delay. "Reckless disregard" for the resulting prejudice does not suffice under the clearly established federal law, law which was properly applied by the state court herein. Therefore, Petitioner's assertion that the twenty year delay in bringing her to trial resulted in due process violations will not support the granting of habeas relief herein.

*Use of hearsay statements at trial*

Finally, the Petitioner asserts in Ground 4 of the Petition that the trial court erred in allowing "testimonial extra judicial hearsay statements" into evidence, based on the opinion announced in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Supreme Court established that "[t]estimonial [hearsay] statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59. Petitioner asserts that the trial court erred in

admitting the statement of Petitioner's deceased brother, uttered to Petitioner's husband John Holton. John Holton testified, over defense counsel objection, about a conversation he had with Petitioner's brother (Llera):

> It didn't make sense to me that a guy [Llera] being a medic in the army, why he would let [the victim] bleed out when he could stop that. So my question to him was, how did this come about; how did it happen that she lay there and bled out with you in the house. And he said, well [defendant] slammed the door and said, "leave the bitch lay."

*Holton*, 280 Ga. at 845.

Additionally, the Petitioner challenges the admission of the audio-taped statement of Jackie Lowery.

Initially, the Court notes that the hearsay statements of the Petitioner's brother at issue in Ground 4 do not appear to be testimonial hearsay. A testimonial statement is generally defined as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Crawford*, 541 U.S. at 51. Conversational statements, such as that made by Petitioner's brother to her husband, do not qualify as testimonial in nature. *Id.* Therefore, the dictates of *Crawford*, implicating Confrontation Clause requirements in regard to testimonial hearsay statements, are inapplicable to the hearsay statements of Petitioner's brother challenged herein. *Davis v. Washington*, 547 U.S. 813, 821 (2006) (only testimonial hearsay statements are subject to the Confrontation Clause).

Moreover, a review of the state court's decision reveals that this decision is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an

unreasonable determination of the facts. The state court specifically found that "[b]ecause Llera's statement to John is not testimonial in nature, it does not implicate the confrontation clause of the federal and state constitution; accordingly, we use the 'highly probable' harmless error approach." *Holton*, 280 Ga. at 847 n.5. Therefore, Petitioner's assertion that she was convicted based on "the introduction of improper testimonial hearsay unsworn statements" from her deceased brother will not support the granting of habeas relief herein.

In regard to Petitioner's challenge to the audio-taped statement of Jackie Lowery, which was admitted and played at trial, the Court notes that this statement is not subject to the Confrontation Clause challenges raised by the Petitioner, as Jackie Lowery appeared and testified at Petitioner's trial and was cross-examined by defense counsel. (Doc. 8-10, pp. 106-127). "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9. Accordingly, Petitioner's claim that the admission of Jackie Lowery's audio-taped statement deprived Petitioner of her rights under the Confrontation Clause will not support the granting of federal habeas relief.

*Conclusion*

Inasmuch as none of the grounds raised by the Petitioner will support the granting of federal habeas relief, **IT IS RECOMMENDED** that this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Therefore, it is recommended that the Court deny a certificate of appealability in its Final Order. If the Petitioner files an objection to this Recommendation, he may include therein any arguments he wishes to make regarding a certificate of appealability.

**SO RECOMMENDED**, this 10th day of August, 2011.

s/ *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**